721 S.E.2d 777

**In the Matter of Efia NWANGAZA, Respondent.**

**No. 27053.**

Supreme Court of South Carolina.

Submitted Sept. 13, 2011.

Decided Oct. 10, 2011.

236

Lesley M. Coggiola, Disciplinary Counsel, and Sabrina C. Todd, Assistant Disciplinary Counsel, both of Columbia, for Office of Disciplinary Counsel.

Stephen John Henry, of Greenville, for respondent.

PER CURIAM.

In this attorney disciplinary matter, the Office of Disciplinary Counsel (ODC) and respondent have entered into an Agreement for Discipline by Consent pursuant to Rule 21, RLDE, Rule 413, SCACR. In the Agreement, respondent admits misconduct and consents to the imposition of a public reprimand or a definite suspension from the practice of law not to exceed nine (9) months. In addition, respondent agrees to the imposition of certain conditions dependent upon the sanction issued. Finally, respondent agrees to pay the costs incurred by ODC and the Commission on Lawyer Conduct (the Commission) in the investigation and prosecution of this matter.

We accept the Agreement and impose a nine (9)month suspension with the following conditions: 1) within twenty (20) days of the filing of this opinion, respondent shall certify to the Commission that she has read the South Carolina Notary Public Manual published by the South Carolina Secretary of State and 2) if she is reinstated to the practice of law, respondent shall notify the Commission before returning to practice and, no later than three (3) months after returning to the practice of law, she shall begin quarterly reporting of her trust account activity to the Commission for a period of one (1) year. The trust account reports shall include copies of respondent's bank statements, including copies of her cancelled checks, copies of her deposit records, a copy of her receipt and disbursement journal, copies of her ledgers for any clients with a trust account balance or trust account activity, copies of her monthly reconciliations, and any other financial records

requested by the Commission as needed to interpret the monthly reconciliations. Further, within thirty (30) days of the filing of this opinion, respondent shall pay the costs incurred by ODC and the Commission in the investigation and prosecution of this matter. The facts, as set forth in the Agreement, are as follows.

## FACTS

### Matter I

Complainant A was the personal representative of his mother's estate. Complainant A hired respondent to assist him in probating the estate. Respondent accepted a $750 retainer to be expended at the rate of $150 per hour. Initially, Complainant A wanted assistance in evicting one of his siblings from their mother's former home. Later, after a *pro se* attempt to sell the home to one of the heirs, Complainant A sought respondent's assistance in obtaining court approval for the sale. The heirs litigated various issues, including the sale of the home to one of the heirs.

Respondent made procedural errors in some of her pleadings, failed to correctly serve at least one defendant, and failed to file an answer to a complaint filed by two of the heirs. Approximately ten months after her representation began, respondent failed to appear at a probate court hearing. Respondent attributed her failure to appear to a calendaring mistake.

As a result of her failure to appear, the probate court sanctioned respondent and Complainant A terminated her services. Thereafter, respondent submitted an invoice to Complainant A and the probate court, seeking protection of her outstanding fees. The invoice indicated respondent was owed a balance of $7,650. Among other billing entries, respondent charged two hours for preparing the invoice.

In a letter to respondent, Complainant A disputed the fee and took the position that the estate did not owe respondent any additional fees. Complainant A forwarded this letter to the Commission; the letter was forwarded to ODC where it was treated as a letter of complaint.

The probate court accepted testimony on the question of respondent's fee. During her testimony, respondent admitted she had not maintained contemporaneous time records and created her invoice after her termination based on her review of the file and her recollection of how much time she would typically devote to the various tasks performed.

In an order awarding fees to respondent, the probate court expressed concern about the accuracy of respondent's time estimates and whether all of the hours she claimed to have expended were necessary. The probate court expressed further concern that most of respondent's billing entries were for full hours and the smallest entry was for one-fourth of an hour. The probate court determined respondent was entitled to a total of $1,500 for her services to the estate; this amount included the $750 retainer she initially received. Respondent appealed the court's order, but later abandoned the appeal.

Although respondent admits she should have maintained contemporaneous time records and should not have billed Complainant A for the time to prepare the invoice, she contends her invoice accurately reflected the time she spent on Complainant A's case.

## Matter II

Complainant B hired respondent to represent him in a divorce action brought by his wife. Although Complainant B wanted a divorce, he disputed the grounds for divorce cited by his wife.

Respondent charges an hourly rate in contested cases and a flat rate for uncontested cases. Although she did communicate her hourly rate to Complainant B, the fee agreement he signed covered both uncontested and contested divorce cases and did not clearly explain how respondent's fee would be calculated in a contested case. This difficulty was exacerbated because respondent inadvertently and incorrectly wrote "uncontested divorce" on a receipt she issued to Complainant B and Complainant B refused to accept that his divorce was contested.

The relationship between Complainant B and respondent deteriorated, in part because of Complainant B's erroneous belief that his case was uncontested and he should be entitled

to pay respondent accordingly. Complainant B complained to the Greenville County Bar Association and a member of the bar's client relations committee attempted to mediate the dispute between respondent and Complainant B. Those efforts were unsuccessful and respondent filed a motion to be relieved with the family court. In preparation for a hearing in the matter, respondent prepared an invoice to give Complainant B. Although the invoice was based on an hourly rate, respondent created the invoice from a review of her file because she had not maintained any contemporaneous time records. The invoice included a charge of one hour for time spent requesting a hearing date on her motion to be relieved. Respondent also included entries totaling five hours for the time she spent communicating with the Greenville County Bar Association member who was trying to resolve her differences with Complainant B.

Respondent admits she should not have billed Complainant B for the time she spent communicating with the Greenville County Bar Association or the time she spent moving to be relieved because these items were not contemplated by the fee agreement. She otherwise contends her invoice accurately reflected the time she spent on the case but realizes she should have kept contemporaneous time records because she was charging Complainant B by the hour.

### Matter III

Respondent issued four checks on her trust account which were returned for insufficient funds. Respondent admits her account was overdrawn because she failed to maintain proper records for her trust account as required by Rule 417, SCACR. In addition to failing to conduct complete monthly reconciliations, respondent failed to maintain an accurate receipt and disbursement journal and accurate client ledgers to assist her in the reconciliation process.

Respondent's practice is such that the only funds she typically holds in trust are for filing fees and service of process. At times, respondent deposited personal funds into the account to avoid overdrafts. Because of her lack of adequate recordkeeping, respondent was unable to provide ODC with an accurate accounting of the funds currently held in trust which, at the time, totaled less than $100.

Respondent maintains she did not misappropriate any client funds and did not deposit unearned fees into her operating account; ODC does not dispute these contentions. During the investigation, respondent completed a Continuing Legal Education Course on trust accounting. She represents she has also sought and implemented the advice of a Certified Public Accountant to bring her trust accounting practices into compliance with Rule 417, SCACR.

Respondent acknowledges it is her responsibility to reconcile her trust account and return any funds due to her clients or other payees. If, after due diligence, respondent is unable to locate the payees for identified funds, she understands she must deliver those funds in accordance with the Uniform Unclaimed Property Act. S.C.Code Ann. §§ 27–18–10 to –400 (2007). If, after due diligence, respondent is unable to identify the proper payees of remaining funds, she understands she must deliver those funds to the Lawyers' Fund for Client Protection.

### Matter IV

Complainant C hired respondent to pursue a contempt action against her ex-husband who was not meeting his spousal support obligation. Respondent filed a Summons and Complaint, along with Complainant C's Verification.

Respondent later discovered an error in her pleadings and drafted an Amended Summons and Complaint. Respondent represents she contacted Complainant C to inform her of the Amended Complaint and told Complainant C she would take care of the situation. Rather than have Complainant C sign a Verification of the amended pleading, respondent signed Complainant C's name to the Verification and notarized the signature. Respondent did not have Complainant C's permission to sign her name nor did she notify Complainant C that she did so.

Although respondent realizes her actions were wrong and violated her responsibilities as a notary, she submits that, at the time, she was simply attempting to avoid an inconvenience to Complainant C.

## LAW

Respondent admits that by her misconduct she has violated the following Rules of Professional Conduct, Rule 407, SCACR: Rule 1.1 (lawyer shall provide competent representation), Rule 1.5(a) (lawyer shall not make an agreement for, charge, or collect an unreasonable fee), Rule 1.5(b) (scope of the representation and the basis or rate of the fee for which the client will be responsible shall be communicated to the client, preferably in writing), Rule 1.15 (lawyer shall hold property of clients or third persons that is in lawyer's possession in connection with a representation separate from lawyer's own property), Rule 3.3 (lawyer shall not knowingly make false statement of fact or law to tribunal), Rule 8.4(a) (it is professional misconduct for lawyer to violate Rules of Professional Conduct), Rule 8.4(d) (it is professional misconduct for lawyer to engage in conduct involving dishonesty, fraud, deceit or misrepresentation), and Rule 8.4(e) (it is professional misconduct for lawyer to engage in conduct that is prejudicial to the administration of justice). Respondent further admits she violated the recordkeeping provisions of Rule 417, SCACR. In addition, respondent admits that hers actions constitute grounds for discipline under the following provisions of Rule 7, RLDE, Rule 413, SCACR: Rule 7(a)(1) (it shall be a ground for discipline for a lawyer to violate the Rules of Professional Conduct) and Rule 7(a)(5) (it shall be a ground for discipline for a lawyer to engage in conduct tending to pollute the administration of justice or to bring the courts or the legal profession into disrepute).

## CONCLUSION

We accept the Agreement for Discipline by Consent and suspend respondent from the practice of law for nine (9) months with the following conditions: 1) within twenty (20) days of the filing of this opinion, respondent shall certify to the Commission that she has read the South Carolina Notary Public Manual published by the South Carolina Secretary of State and 2) if she is reinstated to the practice of law, respondent shall notify the Commission before returning to practice and shall, no later than three (3) months after returning to the practice of law, begin quarterly reporting of her

trust account activity to the Commission for a period of one (1) year. The trust account reports shall include copies of respondent's bank statements, including copies of her cancelled checks, copies of her deposit records, a copy of her receipt and disbursement journal, copies of her ledgers for any clients with a trust account balance or trust account activity, copies of her monthly reconciliations, and any other financial records requested by the Commission as needed to interpret the monthly reconciliations.[1] Within thirty (30) days of the filing of this opinion, respondent shall pay the costs incurred by ODC and the Commission in the investigation and prosecution of this matter. Within fifteen (15) days of the filing of this opinion, respondent shall file an affidavit demonstrating she has complied with the requirements of Rule 30 of the Rules for Lawyer Disciplinary Enforcement, Rule 413, SCACR.

**DEFINITE SUSPENSION.**

TOAL, C.J., PLEICONES, BEATTY, KITTREDGE and HEARN, JJ., concur.

---

1. In imposing this sanction, the Court is mindful of respondent's disciplinary history which includes a private reprimand in 1993 and 1996, a public reprimand in 2005, *In the Matter of Nwangaza*, 362 S.C. 208, 608 S.E.2d 132 (2005), and a letter of caution with a finding of minor misconduct in 2007.